IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALICIA F. O'REILLY,                            *

    Plaintiff,                                 *

    v.                                         *

                                                **CIVIL NO. JKB-20-0570**

BOARD OF CHILD CARE OF THE    *
UNITED METHODIST CHURCH, INC.,

    Defendant.                                 *

    *      *      *      *      *      *      *      *      *      *      *      *

## MEMORANDUM

Plaintiff Alicia F. O'Reilly brought federal and state employment discrimination claims against the Board of Child Care of the United Methodist Church, Inc. ("BCC"), her former employer, who terminated O'Reilly's position as a child care provider at a group home after she sustained a debilitating injury. (Compl., ECF No. 1.)   Defendant BCC moved to dismiss O'Reilly's claims under the Americans with Disabilities Act ("ADA") and the Maryland Fair Employment Practices Act ("FEPA").   (ECF No. 4.)   The motion is fully briefed, and no hearing is required.   *See* Local Rule 105.6 (D. Md. 2018).   For the reasons set forth below, the Court DENIES BCC's motion to dismiss O'Reilly's claims.

### I.    *Background[1]*

In August 2017, O'Reilly began working for BCC as a Treatment Support Specialist in Martinsburg, West Virginia, and in March 2018, she transitioned to the role of Child Care Worker at a group home in Hagerstown, Maryland. (Compl. ¶¶ 5–6.) In her latter role, O'Reilly provided medications, meals, emotional support, transportation, and more services to children residing in a

---

[1] The facts in this section are taken from the Complaint and construed in the light most favorable to Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

group home. (*Id.* ¶¶ 6, 8.) BCC alleges that O'Reilly's transportation role consisted of "driv[ing] residents/clients in agency vehicles" to appointments, including medical and social visits, "as needed." (Mot. Dismiss Mem. Supp. at 3, ECF No. 4-1.)

In November 2018, O'Reilly injured her patella (kneecap) in a car accident that occurred while she was transporting a client, necessitating emergency surgery and a ten-day hospital stay. (Compl. ¶¶ 10–12.) O'Reilly alleges that she spent the next several months "undergoing intensive outpatient physical therapy," and throughout this time, she was unable to "drive, walk or work." (*Id.* ¶ 13.) In late January 2019, O'Reilly's surgeon allegedly informed her that she would be able to return to work and perform her job with "light duty restrictions." (*Id.* ¶ 14.) Sherry Porter, a nurse case manager who did not work for BCC, but allegedly discussed O'Reilly's situation with BCC and BCC's workers compensation provider, allegedly informed O'Reilly that she might be able to temporarily perform "office work" in a "light duty" position at BCC's Martinsburg location. (*Id.* ¶ 15.) O'Reilly then allegedly took an examination and rented a room near BCC's Hagerstown office to prepare for her return to work. (*Id.* ¶¶ 16–17.)

On March 1, 2019, BCC Human Resources Generalist Tonya Morse allegedly informed O'Reilly that her employment would be terminated on March 8, 2019 if she did not provide a "return to work letter from her doctors stating that she was 'released for full duty.'" (*Id.* ¶ 18.) On March 8, O'Reilly's doctor allegedly declared that she could return to work, provided that she did not "drive for more than one hour during a four-hour period," lift heavy weights, bend, or stoop. (*Id.* ¶ 19.) O'Reilly alleges that her doctor "was optimistic that he would be able to significantly reduce her restrictions within the following six weeks." (*Id.*) O'Reilly allegedly believed that her doctor's restrictions would not impede her performance as a Child Care Worker, as she "rarely, if ever, drove more than one hour in any four-hour period, and she rarely, if ever, lifted more than

twenty pounds." (*Id.* ¶¶ 20, 31.) Alternatively, Porter allegedly told O'Reilly that she could perform the light duty work available at BCC's Martinsburg location "on a temporary basis until the temporary limitations were lifted." (*Id.* ¶ 21.)

On March 11, 2019, however, Morse allegedly informed O'Reilly that, based on her doctor's recommendations, "she needed to immediately submit her written resignation from her position." (*Id.* ¶ 22.) O'Reilly responded that she would not resign, as "she was fully able to work with minor accommodations," and she mentioned the light duty position that was allegedly available in Martinsburg. (*Id.* ¶¶ 23–24.) In her response to BCC's motion to dismiss, O'Reilly explains that, as an accommodation, she could have agreed to drive no "more than two hours in an eight hour shift." (Opp'n Mot. Dismiss at 2, ECF No. 7.) After O'Reilly asserted that she could perform her job with minor accommodations, Morse allegedly "refused to discuss the matter," and BCC terminated O'Reilly's employment later that day. (Compl. ¶¶ 25–26.)

Several days later, O'Reilly's immediate supervisor allegedly said that no one at BCC had consulted her about O'Reilly's medical restrictions, the possibility of providing O'Reilly with reasonable accommodations, or O'Reilly's sudden termination. (*Id.* ¶¶ 28–30.) O'Reilly's supervisor even allegedly "assured [O'Reilly] that they could have easily provided accommodations for her to return to work at either the Martinsburg or Hagerstown locations." (*Id.* ¶ 30.) On April 7, 2019, O'Reilly allegedly heard from the supervisor of BCC's Martinsburg office, who "was shocked and stated that that [sic] nobody had ever notified her that Ms. O'Reilly had been terminated." (*Id.* ¶ 32.) This supervisor had allegedly believed that O'Reilly would work in the light duty position that was available at BCC's Martinsburg office. (*Id.*)

As a result of BCC's termination of her employment, O'Reilly allegedly experienced "lost wages and benefits, as well as emotional distress, including extreme embarrassment and

humiliation, anxiety, crying spells, stress and tension headaches, loss of appetite, depression, diminished self-esteem, and loss of sleep." (*Id.* ¶ 33.)

## II.    Legal Standard

"In considering a motion to dismiss" pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

According to Federal Rule of Civil Procedure 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Pro. 12(d). In that event, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

## III.    Analysis

In her complaint, O'Reilly states plausible claims that BCC failed to accommodate her and unlawfully terminated her in contravention of the ADA and FEPA. BCC's challenges to O'Reilly's claim involve questions of fact that the Court will not decide at the motion to dismiss stage, before BCC has even answered O'Reilly's complaint. BCC seeks to introduce evidence that

4

sheds light on these factual questions (*see* Mot. Dismiss Exs. 1–3, ECF Nos. 4-3, 4-4, 4-5), but the

Court sees no reason to bypass standard procedures and consider BCC's evidence at the motion to

dismiss stage. Likewise, the Court will not yet consider the evidence that O'Reilly offers in the

declaration accompanying her opposition to BCC's motion to dismiss. (*See* Opp'n Mot. Dismiss

Ex. A, ECF No. 7-2.)

### A. ADA Claims

To bring suit under the ADA, a plaintiff must be a "qualified individual," which is "an

individual who, with or without reasonable accommodation, can perform the essential functions

of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The

ADA defines "reasonable accommodation" to include "making existing facilities used by

employees readily accessible to and usable by individuals with disabilities," "job restructuring,

part-time or modified work schedules," and "reassignment to a vacant position," among other

potential accommodations. *Id.* § 12111(9). When an employee informs her employer that she

seeks an accommodation for a disability—"even if the employee fails to identify a specific,

reasonable accommodation"—the employer then has a "good-faith duty 'to engage [with his or

her employee] in an interactive process to identify a reasonable accommodation.'" *Jacobs v.*

*N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015) (quoting *Wilson v. Dollar*

*Gen. Corp.*, 717 F.3d 337, 346 (4th Cir. 2013)).

Federal ADA regulations define "essential functions" as "the fundamental job duties of

the employment position the individual with a disability holds or desires," as opposed to any

"marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A job's "essential functions"

can be ascertained from various factors, including the "employer's judgment as to which

functions are essential," "[w]ritten job descriptions," "[t]he amount of time spent on the job

5

performing the function," and "[t]he current work experience of incumbents in similar jobs." *Id.* § 1630.2(n)(3).

Once a plaintiff is qualified to bring suit under the ADA, in order to establish a failure-to-accommodate claim, the plaintiff must show "(1) that she had a disability within the meaning of the statute; (2) that her employer had notice of the disability; (3) that she could perform the essential functions of her job with a reasonable accommodation; and (4) that her employer declined to make such an accommodation." *Stephenson v. Pfizer, Inc.*, 641 F. App'x 214, 219 (4th Cir. 2016).

In order to bring a claim of disability discrimination, a plaintiff must show "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." *Jacobs*, 780 F.3d at 572 (quoting *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)).

BCC argues that (1) O'Reilly is not a "qualified individual" under the ADA, and (2) BCC provided O'Reilly with a reasonable accommodation in the form of an unpaid leave of absence for several months leading up to her termination.[2] (Mot. Dismiss Mem. Supp. at 8.) The Court focuses on BCC's arguments because O'Reilly has plausibly alleged the other elements of both ADA claims.[3] BCC's arguments, regardless of their merit, rest upon disputed factual questions that cannot be decided by the Court at the motion to dismiss stage.

---

[2] Relatedly, BCC argues that "the ADA does not require BCC to provide Plaintiff with light duty" work. (Mot. Dismiss Mem. Supp. at 8.) While the ADA does not require employers to provide specific accommodations to disabled employees, this argument does not resolve the relevant issue of whether O'Reilly plausibly alleged that BCC failed to engage in an interactive process to provide her with a reasonable accommodation.

[3] O'Reilly's complaint states plausible, undisputed claims that she had a disability in the form of a broken patella (Compl. ¶ 39), BCC knew of this injury (*id.* ¶ 18), BCC did not provide O'Reilly with an accommodation that she requested (*id.* ¶ 25), and BCC discharged O'Reilly because of her disability and her inability to fully resume her typical job functions (*id.* ¶¶ 18, 22).

First, determining whether driving more than one hour in every four is an "essential"—as opposed to "marginal"—function of the Child Care Worker role involves weighing various fact-intensive factors and considering ample evidence, potentially including testimony from other Child Care Workers employed at BCC. The U.S. Court of Appeals for the Fourth Circuit has refused to resolve the fact-intensive question of whether driving was an essential function of an employee's position, after that employee was wholly unable to drive due to a permanent disability. *Stephenson*, 641 F. App'x at 215, 221. "Identifying the essential functions of a job requires a factual inquiry that is guided by several statutory and regulatory factors," the Fourth Circuit explained, concluding that "[t]hat factual dispute is for a jury to resolve." *Id.* at 221.

Similarly, determining whether O'Reilly sought a reasonable accommodation, whether BCC offered O'Reilly a reasonable accommodation, and whether the parties engaged in an interactive process involve questions of fact that will be decided at a later stage. According to the Fourth Circuit, "a reasonable accommodation is one that is feasible or plausible," and ascertaining the reasonableness of a proposed accommodation is a factual question. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 414, 416 (4th Cir. 2013). As such, it is not clear as a matter of law that BCC provided O'Reilly with a reasonable accommodation by granting her unpaid leave before she requested an accommodation. Additionally, O'Reilly plausibly states a claim that BCC "failed and refused to engage in the required 'interactive process' with Ms. O'Reilly." (Compl. ¶ 41.) Whether BCC terminated O'Reilly without discussing any potential accommodations and whether BCC made a good-faith effort to engage in an interactive process involve questions of fact. A "party that obstructs or delays the interactive process is not acting in good faith," and a "party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Crabill v. Charlotte Mecklenburg Bd. Of Educ.*, 423 F. App'x 314, 323–24 (4th Cir. 2011) (quoting *Beck*

7

*v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135–36 (7th Cir. 1996)) (vacating a grant of summary judgment to an employer in an ADA suit because the availability of a reasonable accommodation was an issue for the jury). Factual questions that preclude summary judgment are certainly not capable of resolution at the motion to dismiss stage.

Because O'Reilly plausibly alleges the required elements of her ADA claims and BCC's objections are factual in nature, the Court will not dismiss O'Reilly's claims.

### B. FEPA Claims

Under Maryland's FEPA, an employer cannot "fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of [ ] the individual's . . . disability" or "fail or refuse to make a reasonable accommodation for the known disability of an otherwise qualified employee." Md. Code Ann. § 20-606(1), (4).

FEPA claims are analyzed similarly—and contain analogous elements—to ADA claims. The Maryland Court of Appeals "look[s] to federal decisions interpreting ADA provisions for guidance in construing similar clauses in FEPA." *Peninsula Reg'l Med. Ctr. v. Adkins*, 137 A.3d 211, 223–24 (Md. 2016). Bringing a FEPA failure-to-accommodate claim requires showing (1) that an employee "was an individual with a disability; (2) that the employer had notice of . . . her disability; (3) that with reasonable accommodation . . . she could perform the essential functions of the position . . . and (4) the employer failed or refused to make such accommodations." *Townes v. Md. Dep't of Juvenile Servs.*, Civ. No. JKB-15-1093, 2015 WL 5928114, at *6 (D. Md. Oct. 8, 2015) (internal quotation marks and citation omitted). Establishing a FEPA disability discrimination claim requires an employee to show "(1) that he or she had a disability; (2) that notwithstanding the disability, he or she was otherwise qualified for the employment, with or

8

without reasonable accommodation; and (3) that he or she was excluded from employment on the basis of his or her disability." *Adkins*, 137 A.2d at 237.

Notably, both parties regard the analysis under FEPA as resembling that under the ADA. Neither party provides any discussion of the validity of O'Reilly's FEPA claims; both O'Reilly and BCC apparently agree that the fate of O'Reilly's FEPA claims should hinge upon the disposition of her ADA claims. (*See* Mot. Dismiss Mem. Supp. at 8.)

Because BCC does not make any FEPA-specific arguments in its motion to dismiss, both FEPA and ADA claims involve similar analyses, and BCC's motion to dismiss raises factual questions, the Court will not dismiss O'Reilly's FEPA claims.

## IV.    Conclusion

For the foregoing reasons, an order shall enter denying Defendant's motion to dismiss.

DATED this 6 day of October, 2020.

BY THE COURT:

James K. Bredar
Chief Judge